## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **THE TRUSTEES OF PRINCETON UNIVERSITY** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| **TOD WILLIAMS BILLIE TSIEN ARCHITECTS, LLP; JACOBS ARCHITECTS/ENGINEERS, INC.; and JACOBS CONSULTANCY INC.,** | ) **Civil Action No. 3:19-cv-21248-BRM-LHG** |
| **Defendants.** | ) |
| | ) |
| | ) |
| **TOD WILLIAMS BILLIE TSIEN ARCHITECTS, LLP,** | ) |
| | ) |
| **Third-Party Plaintiff,** | ) |
| **vs.** | ) |
| **ARUP USA, INC. and F.J. SCIAME CONSTRUCTION COMPANY, INC.,** | ) |
| | ) |
| **Third-Party Defendants.** | ) |

## JOINT DISCOVERY PLAN

The Trustees of Princeton University, Tod Williams Billie Tsien Architects, LLP, Jacobs Architects/Engineers, Inc., Jacobs Consultancy Inc., ARUP USA, Inc., and F.J. Sciame Construction Company, Inc. (the "Parties") mutually agree to the following Discovery Plan, including a protocol ("Protocol") regarding the discovery of electronically stored information ("ESI") and hard copy documents, with respect to the disputes between the Parties. The Litigation between the Parties pending in the U.S. District Court for the District of New Jersey shall be referred to herein as the  as "Litigation."   In this Discovery Plan, the individual parties are generally referred to as a "Party" and collectively as the "Parties."

1

1.    **Introduction**

Each Party is in possession of significant amounts of information that may be relevant to the Litigation.  The Parties agree to cooperate in identifying potentially relevant information that will assist the Parties in identifying potentially Discoverable Information.  Further, each Party acknowledges an interest in a discovery process that is efficient, cost effective, flexible, and designed to allow for the required disclosure of relevant information in the Litigation.   The Parties expect that by acting in good faith and in a generally cooperative manner regarding discovery in the Litigation, the Parties will further these goals.

2.    **Definitions**

2.1.    All the definitions set forth in the first paragraph of this Discovery Plan are incorporated herein by reference.

2.2.    <u>All/Each</u>: The terms 'all' and 'each' shall both be construed as all and each.

2.3.    <u>And/Or</u>: The connectives 'and' and 'or' shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

2.4.    <u>Bates number</u>: a page-level unique alpha-numeric identifier associated with every document produced, including physical sheets of paper, electronically stored TIFF images, or other tangible thing, consisting of (1) an alphabetic portion and (2) a numeric portion incremented according to a scheme defined at the Producing Party's discretion to ensure that the alphanumeric identifier for each page of physical sheets of paper, electronically stored TIFF images, or other tangible thing is unique (e.g., "_00000001-0001", "0000001" or "DocID 00001_001"). Document-level Bates numbers may be appropriate in limited circumstances such as the production of native files (*e.g.*, Excel Workbooks).

2.5.   <u>Communication:</u> The term 'communication' means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.6.   <u>Concerning</u>: The term 'concerning' means relating to, referring to, describing, evidencing or constituting

2.7.   <u>Confidential Information</u>: The term "Confidential Information" is defined in the Stipulated Protective Order                    .

2.8    <u>Court</u>: The Court in which the Litigation is pending in the case identified above.

2.9.   <u>Custodian</u>: the person from whom a Document is or was collected.  For example, the Custodian of an email document is the person from whose email mailbox the email file was collected.

2.10.   <u>Discoverable Information</u>: for the purposes of this Discovery Plan only, the term "discoverable information" shall mean all documents, ESI and other information that is discoverable in the Litigation.

2.11.   <u>Document</u>: 'document' is synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft or non-identical copy is a separate document within the meaning of this term. The term "Document: shall include anything subject to production or inspection, including but not limited to (1) any hard copy document or ESI— including electronic communications, presentations, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any reasonably accessible medium from which information can be obtained by the Producing Party; or (2) any tangible thing.

2.12.   <u>Electronically Stored Information or "ESI"</u>: any information or data that is originally created, manipulated or used, communicated, and stored in digital format.   This definition expressly excludes information that was prepared as or previously available in hard copy but which was converted and now maintained in digital format for reasons of business convenience or as otherwise may have been necessary.

2.13.   <u>Extracted Text</u>: the text extracted from a document, and includes all header, footer, and document body information when available.

2.14.   <u>Foreign Language Document</u>: any document in which a substantial portion of the unique substantive content is in a language other than English.

2.15.   <u>Hard Copy Document</u>: any document kept in physical, paper form, as opposed to electronic form, in the usual course of business.

2.16.   <u>Load File</u>: an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends.   A load file should also contain data relevant to the individual documents, including extracted and user or system-created Metadata as addressed in Exhibit A attached hereto and incorporated herein by reference.

2.17.   <u>Meet</u>: as used in this Discovery Plan, to "meet" includes meeting in person or telephonically.

2.18.   <u>Metadata</u>: (i) information embedded in or associated with a Native File or application that generated, edited, or modified such Native File which describes the characteristics, origins, usage or validity of the electronic file or (ii) information generated automatically by the

4

operation of a computer or other information technology application when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such application.

2.19.   <u>Native Format or Native File</u>: means the associated file format defined by the original application with which an electronic file was created.  For example, the Native Format associated with a Microsoft Word 2007 file is .docx and the Native Format associated with an Adobe Acrobat file is .pdf.

2.20.   <u>Non-Custodial Sources</u>: shared data repositories maintained in the ordinary course of business and not necessarily associated with individual Custodian(s).  Examples of Non-Custodial Sources may include, but are not limited to, shared file cabinets, shared network drives or fileservers, electronic document management systems, or databases.

2.21.   <u>Number</u>: The use of the singular form of any word includes the plural and vice versa.

2.22.   <u>OCR Text</u>: searchable text from a document generated by means of optical character recognition performed using appropriate software.

2.23.   <u>Outside Counsel</u>: the attorneys and employees of any external law firm representing a Party to the Litigation, including, without limitation, vendors retained to assist with the performance of discovery obligations.

2.24.   <u>Parties</u>: The terms "plaintiff," and "defendant" and "Third Party Defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, former employees working on the Project, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the Litigation.

2.25.   <u>Person</u>: The term "person" means any natural person or any business, legal or governmental entity or association.

2.26.   <u>Preserve or Preservation</u>: for purposes of this Discovery Plan, "preserve" and "preservation" shall mean to keep and not alter any discoverable information as to its form and content.  In the case of an electronic file, "preserve" and "preservation" shall mean to retain the original file or a forensically sound copy of that file.  A forensically sound copy shall mean a copy made by a method that does not alter the file and application metadata identified in Exhibit A associated with that electronic file.

2.27.   <u>Privileged Information</u>: all documents, ESI, tangible objects, and other information or material of the Parties which may be protected from discovery as privileged information, attorney work product and/or any other privilege recognized by the laws of New Jersey and other applicable federal laws, or, with regard to documents, ESI, tangible objects and other information or material owned or possessed by third parties that are not owned by, or subsidiaries or affiliates of, the Parties, the privileges recognized by the laws of the state where such documents were created.

2.28.   <u>Producing Party</u>: a Party which is producing Discoverable Information.

2.29.   <u>Project Documents</u>: non-email documents created, stored, or maintained by either Party in the ordinary course of their business relating to the Project.  Examples of Project Documents may include, but are not limited to, reports, schedules, drawings, meeting minutes, tracking logs, and other routine project documentation, as well as official letter correspondence to the extent it is readily accessible from sources other than email.

2.30.   <u>Receiving Party</u>: a Party which is receiving Discoverable Information.

2.31.   <u>Requesting Party</u>: a Party which is requesting Discoverable Information.

2.32.   <u>Responding Party</u>: a Party which is responding to a request for Discoverable Information.

**3.    Scope of Production of Discoverable Information including ESI and Limitations of Preservation**

3.1    Each Party represents that it has taken reasonable steps to preserve reasonably accessible sources of ESI and other Discoverable Information, including implementation of a legal hold.

3.2    <u>Accessible ESI.</u>  Except as set forth in paragraph 3.3 below, reasonably accessible sources of ESI include devices which store active data accessed in the regular course of business including e-mail servers, shared network drives, workstation or laptop hard drives, and storage devices and media.  Subject to any limits negotiated by the Parties, including those in Section 5 below, each Party has conducted or will conduct a reasonably diligent search of those reasonably accessible sources in which it has reason to believe relevant ESI responsive to the opposing Party's discovery requests will be found.

3.3    <u>Not Reasonably Accessible ESI.</u>  The Parties need not preserve, produce, or identify on a privilege log the following categories of ESI for the Litigation:

(a)    Data stored in a backup system for the purpose of system recovery or information recovery, including but not limited to, disaster recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows except to the extent that such sources are known to be the only sources of Discoverable Information;

(b)    Voicemail messages, unless in the ordinary course of business such messages were retained in email or on a Project server already being produced by the Parties;

7

(c)     Instant messages, unless in the ordinary course of business such messages are retained in a reasonably accessible and central storage location from which ESI information or documents already will be produced;

(d)     ESI stored on mobile devices, including smart phones, or tablets;

(e)     Logs of calls;

(f)     Deleted, erased, or overwritten computer files, whether fragmented or whole which were deleted in the regular course of business before there was a duty to preserve ESI.   However, the Parties acknowledge that nothing in this Discovery Plan authorizes the intentional deletion of relevant ESI after the duty to preserve arose;

(g)     Data stored in random access memory ("RAM"), cache memory, or in temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

(h)     Data stored on photocopiers, scanners, and fax machines; and

(i)     Logs of Server, system, or other network activity.

3.4     <u>Other Types of ESI May Not Be Reasonably Accessible.</u>  Nothing in this Discovery Plan prevents any Party from asserting that other categories of ESI are not reasonably accessible.

3.5     <u>Preservation Does Not Affect Discoverability or Claims of Privilege</u>.   By preserving documents or ESI for the purpose of the Litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

4.      **Document Requests and Responses**

Each Requesting Party may serve written requests for the production of documents, within the time allowed by the Federal Rules of Civil Procedure or as modified by Order of the Court or written agreement of the Parties.

5.      **Identification and Production of Potentially Discoverable Information**

5.1     <u>Identification of Discoverable Information.</u>  Except as otherwise provided below, the identification, collection and production of documents and ESI shall occur through identification of appropriate custodians, sources, date restrictions, and other methods reasonably designed by the Producing Party to identify and produce documents and ESI responsive to the Requesting Party's document requests.

5.2     <u>Custodians</u>.    The Parties have identified Custodians for the initial production of documents, including ESI.  Each Party reserves the right to seek the production of documents, including ESI, from additional Party Custodians for good cause shown.

5.3     <u>Identification and Production of Custodian Documents</u>.     The Producing Party shall conduct a reasonable search of the identified Custodians' documents and ESI and then produce all such documents that are responsive to the Requesting Party's document requests and not Privileged Information.  Documents from the Custodians will be produced in accordance with a schedule agreed to by the Parties or as otherwise required by Order of the Court.

5.4     <u>Discoverability of Search and Review Methodology.</u>  The Parties agree that the methodology used to identify, search, cull, and review sources of ESI, including the identity of sources (or folders or files within sources) searched or not searched, and the nature of the searches performed on those sources for purposes of production, will be discoverable and not subject to a

claim of attorney-client privilege or work product.  The preceding notwithstanding, attorney-client communications and work product regarding the value, importance, or significance to the Litigation of any materials found within the identified sources and the discovery process and strategy will remain privileged and protected from disclosure.

5.5     De-NISTing.  To the extent reasonably practicable, electronic file collections will be De-NISTed, the process by which non-user generated files are removed from review and production based on a hash value list maintained by the National Institute of Standards and Technology.

5.6     De-duplication.  To the extent reasonably practicable, each Party shall remove duplicate ESI, including without limitation electronic mail, to reduce unnecessary cost of reviewing and producing duplicative ESI, in accordance with the Production Format described in Exhibit A.  Such de-duplication shall be performed on a "family level."

5.7     Email Threading.  In order to limit the volume of duplicative content produced from email threads, the Parties may utilize email-threading analytics software to exclude email messages or attachments wholly contained and reviewable within later-in-time messages and attachments from the same email threads that are produced, provided that (1) if a thread with attachments is being produced, all responsive attachments from any message in the thread shall be included in the production and (2) the Producing Party retains all down-thread emails which are excluded from production in its review database, so that such messages can be produced upon a specific request by the Receiving Party for good cause shown.

5.8     ESI Production Format.  Where practicable, the Parties shall produce ESI according to the format specified in Exhibit A, attached hereto.  To the extent a Producing Party reasonably expects production of specific ESI in the format described in Exhibit A will be impractical or unduly

10

burdensome, the Producing Party shall so notify the Receiving Party and propose an alternative format for such ESI.  The Parties will then meet and confer in good faith to attempt to agree on an acceptable format for the production of the ESI at issue.

5.9     <u>Review and Production of Hard Copy Documents.</u>  Each Producing Party is entitled to collect, scan, and review its hard copy documents before producing only those documents which are responsive and not Privileged Information in the document production format described in Exhibit A.  In advance of production, the Producing Party may offer the Receiving Party the opportunity to review some or all its hard copy documents as those documents are maintained in the ordinary course of business (which shall include any available index to the boxes and files contained therein prepared by the Producing Party) so that the Receiving Party may identify and designate which, if any, of the documents it selects for scanning and production.  This advance review shall not constitute a waiver of any privileges or protections.  The Producing Party shall have the right to review any selected documents for privilege, responsiveness and confidentiality before production.  The Producing Party shall bear its own costs of scanning and producing its hard copy documents.

5.10    <u>Right to Conduct Document Review.</u>  Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents or ESI for relevance, responsiveness, and/or segregation of privileged information before production.

**6.    <u>Privilege Logs</u>**

6.1     The following categories of documents are presumptively privileged or protected work product and the Parties are not required to provide a log of such documents:

        (a)     Communications exclusively between a Party and its Outside Counsel;

        (b)     Attorney work product created by Outside Counsel;

(c)     Internal communications within Outside Counsel.

6.2     The Parties agree that, except as provided in paragraph 6.1 regarding presumptively privileged documents and ESI, they will produce privilege logs and will exchange information regarding claims of privilege and/or work product protection in an efficient manner.   For documents and ESI that have been withheld or redacted as privileged, the withholding or redacting Party shall provide a privilege log of such documents and ESI.

6.3     To permit the Requesting Party to assess any claim of privilege, the Producing Party must provide a privilege log containing the Bates number or Document ID (if any) of each document withheld and the following information corresponding to the type of document withheld:

    a.     *For E-Mail*

        i.     From: Lists the contents of the "From" field of the email, or the author/custodian field of a document;

        ii.     To: Lists the contents of the "To" field of the email;

        iii     CC: Lists the contents of the "CC" (carbon copy) field of the email;

        iv.     BCC: Lists the contents of the "BCC" (blank carbon copy) field of the email;

        v.     Date: Lists the date the email was sent, or the date the document was last modified;

        vi.     Custodian: Identifies the individual the document was obtained from;

        vii.     DocTitle/Email Subject: Sufficient information as to the nature of the document or email.

        viii.     Basis of the claimed privilege or other reason for withholding (e.g., "ACP" for attorney-client privilege, "WP" for work product, or other descriptions as necessary based on the specific privilege being claimed).

        ix.     a unique document number/identifier, which need not be formatted as, or consecutive with, Bates numbers of produced documents.

        *b.*    *For Other Documents*

           i      Date

           ii.     Author

           iii.    Recipients

           iii.    Custodian;

           iv.    DocTitle/Email Subject;

           v.     Basis of the claimed privilege or other reason for withholding.

           vi.    a unique document number/identifier, which need not be formatted as, or consecutive with, Bates numbers of produced documents.

6.4    Where a Party is asserting privilege on the same basis with respect to multiple documents, the description of that basis may be provided by group or category, provided that all substantive information required by paragraph 6.3 above has been provided in a comprehensible format.  The Producing Party may include only a single privilege log entry for multiple email messages in the same email string to the extent such messages are contained in one individual email file and subject to the same claim of privilege.

6.5    Each Party will provide a privilege log of documents withheld from or redacted in its production of Custodian and other Project Documents, within 30 calendar days of the conclusion of production of all documents.

**7.**    **Privileged and Other Confidential Information**

7.1    The Parties will agree to the protection of Confidential Information in a separate Stipulated Protective Order.  The Parties agree further that the production of privileged document in this action shall not act as a waiver of the privileged status of those documents.  The Parties will also agree to an Order Implementing Fed. R. Evid. 502(d) – Inadvertent Disclosure for the

protection of Privileged Materials, which the Parties will seek to have So-Ordered by the Court. See form attached as Exhibit B.

      7.2     Any Party in possession of Confidential Information shall exercise appropriate care with regard to the storage, custody, copying, and use of the information in order to ensure that the confidential nature of that information is maintained.

## 8.     Third Party Discovery

      The parties have agreed to cooperate, to the extent feasible, with regard to the service of subpoenas for the production of documents and notices of the depositions of third parties.  The parties will identify and agree upon the third parties that are likely to be subpoenaed for documents or noticed for deposition by one or both parties:

## 9.     Email Service

      The parties have agreed that, to the extent feasible, all court filings, if not served through ECF, will be served via email and such service shall constitute proper service under the Federal Rules of Civil Procedure.  Moreover, the parties agree that each party may serve discovery, in lieu of other service methods, by email under Fed. R. Civ. P. 5(b)(2)(E).

## 9.     Modification

      This Discovery Plan may be modified by agreement of the Parties, order of the Court or recommendation of the Special Master.  Any such agreement of the Parties or recommendation of the Special Master shall be memorialized in writing by email or otherwise.

### [SIGNATURES OF COUNSEL ON FOLLOWING PAGES]

We hereby Consent to the form and Entry of this Order:

BY: _____

Sarah B. Biser, Esq.

Jeffrey M. Pollock, Esq.

**FOX ROTHSCHILD LLP**

997 Lenox Drive, Building 3

Lawrenceville, New Jersey 08648

*Attorneys for Plaintiff*

DATED: __November__ __19__, 2020

BY: _____

John M. Becker, Esq.

**THOMPSON BECKER LLC**

Ten Melrose Avenue, Suite 400

Cherry Hill, New Jersey 08003

*Attorneys for Defendant/Third-Party Plaintiff*

*Tod Williams Billie Tsien Architects, LLP*

DATED: __November 20__, 2020

BY: _____

Stuart M. Lederman, Esq.

Cristin M. Moyle, Esq.

**RIKER DANZIG SCHERER**

**HYLAND & PERETT LLP**

One Speedwell Avenue

Morristown, New Jersey 07962

DATED: __19__, 2020

BY: _____

Ira. M. Schulman

**PEPPER HAMILTON LLP**

301 Carnegie Center, Suite 400

Princeton, New Jersey 08543

*Attorneys for Third-Party Defendant*

*F.J. Sciame Construction Co., Inc.*

DATED: _____, 2020

Kathleen O. Barnes, Esq.

**WATT TIEDER HOFFAR**

**& FITZGERALD LLP**

1765 Greensboro Station Place, Suite 1000

McLean, VA 22102

*Attorneys for Defendants Jacobs*

*Architects /Engineers, Inc. and*

*Jacobs Consultancy, Inc.*

DATED: _____, 2020

BY: _____

Loryn P. Riggiola, Esq.

**ZETLIN & DE CHIARA LLP**

80 Bloomfield Avenue

*Attorneys for Third-Party Defendant ARUP USA,*

*Inc.*

DATED: __November 23__, 2020

**IT IS SO ORDERED**

15

_____, 2020 _____

**UNITED STATES**

**DISTRICT JUDGE**

We hereby Consent to the form and Entry of this Order:


BY: _____

Sarah B. Biser, Esq.

Jeffrey M. Pollock, Esq.

**FOX ROTHSCHILD LLP**

997 Lenox Drive, Building 3

Lawrenceville, New Jersey 08648

*Attorneys for Plaintiff*

DATED: **November** __**19**__, 2020


BY: _____

Stuart M. Lederman, Esq.

Cristin M. Moyle, Esq.

**RIKER DANZIG SCHERER**

**HYLAND & PERETT LLP**

One Speedwell Avenue

Morristown, New Jersey 07962

DATED: _____ ____, 2020


Kathleen O. Barnes, Esq.

**WATT TIEDER HOFFAR**

**& FITZGERALD LLP**

1765 Greensboro Station Place, Suite 1000

McLean, VA  22102

*Attorneys for Defendants Jacobs*

*Architects /Engineers, Inc. and*

*Jacobs Consultancy, Inc.*

DATED: _____ ____, 2020


BY: _____

John M. Becker, Esq.

**THOMPSON BECKER LLC**

Ten Melrose Avenue, Suite 400

Cherry Hill, New Jersey 08003

*Attorneys for Defendant/Third-Party Plaintiff*

*Tod Williams Billie Tsien Architects, LLP*

DATED: _____ ____, 2020


BY: _____

Ira. M. Schulman

**PEPPER HAMILTON LLP**

301 Carnegie Center, Suite 400

Princeton, New Jersey 08543

*Attorneys for Third-Party Defendant*

*F.J. Sciame Construction Co., Inc.*

DATED: _____ ____, 2020


BY: _____

Loryn P. Riggiola, Esq.

**ZETLIN & DE CHIARA LLP**

80 Bloomfield Avenue

*Attorneys for Third-Party Defendant ARUP USA,*

*Inc.*

DATED: _____ ____, 2020


**IT IS SO ORDERED**

15          ____, __ **2020**   _____

                      **UNITED STATES**

                      **DISTRICT JUDGE**

**EXHIBIT A**

**DOCUMENT PRODUCTION FORMAT**

The Parties agree that non-privileged documents will be produced electronically, in a password-protected encrypted format, via a portable external hard drive, electronic file sharing platform, or other method mutually agreed to by the Parties.   Each Party will pay for the scanning, processing, and producing of its own documents. The Parties further agree as follows:

1. **All electronically stored information (ESI):**

ESI will be produced as single-page 300 DPI Tagged Image  File Format ("TIFF") images, except for those documents that cannot be meaningfully produced as TIFF images, which will be produced in native file format in its original form (with the exception of accounting files or other proprietary file formats) named according to the  sequential alpha-numeric document identifier. Accounting files will be exported to Excel and produced as Excel files with bates numbering. Other proprietary file formats will be exported and produced as text searchable TIFF images, with Bates numbering.  Extracted text files will accompany the natives on a document level, placed inside a "Text" folder.  Where appropriate or specifically requested, documents produced in color shall be single page, color JPEG images.

Spreadsheet documents (*e.g.*, Excel, CSV, etc.) and any other files that are not easily converted to image format shall be produced in native format.  Any documents produced in native format will be accompanied by a placeholder TIFF image indicating the document production/Bates number of the native document.  The native documents shall be named to match their respective document production/Bates number and shall be referenced by the corresponding database metadata load file containing the relative path and file name of that native document.

2. The production deliverable folder structure should be as follows:

16

- o  Volume Name (VOL001)

  - ▪  Data (load files)

    - •  Concordance DAT file containing metadata, the relative path to the native file and the relative path to the text file

    - •  OPT file for image loading

    - •  Comma delimited OCR cross-reference load file.

  - ▪  Natives

    - •  001 (1000 files max per directory)

    - •  002 (1000 files max per directory)

    - •  … (1000 files max per directory)

  - ▪  Text

    - •  001 (1000 files max per directory)

    - •  002 (1000 files max per directory)

    - •  … (1000 files max per directory)

3. All productions will include database load files as set forth above, which will include metadata, document boundary and document family boundary information and relative paths to images, native files and document level text files, including the fields below:

| Field Name | Field Description | Possible Values/Examples | Field Type |
|---|---|---|---|
| ProdDocID | Sequential incremental alpha-numeric document identifier. | ex: PROD0000001 | Text |
| Production Beginning Bates Number | The ProdDocID / Bates number of the first page of the document. | | Text |

| Production Ending Bates Number | The ProdDocID / Bates number of the last page of the document. | | Text |
|---|---|---|---|
| BegAttach | Displays ProdDocID / Bates number of parent record. | ex: PROD0000001 | Text |
| EndAttach | Displays ProdDocID / Bates number of last attached document in family. | ex: PROD0000002 | Text |
| Attachment Count | The number of attachments to an email. | | Text |
| Volume | Incremental production volume number. | ex: VOL001 | Text |
| Confidentiality Designation | The confidentiality designation, if any, for the document pursuant to any protective order in the case. | | Text |
| Custodian | Displays textual value of custodian assigned by user in processing application. | ex: John Doe | Text |
| All Custodians | Identifies any other custodians who were in possession of a file after de-duplication. | ex: John Doe | Text |
| ApplicationName | Application Name field value pulled from metadata of the native file. | ex: Microsoft Office Word | Text |
| FileDescription | Description of native file type. | ex: MS Word for Windows Document | Text |
| Folder/Original File Path | Fully qualified original path to the source folder, files, and/or mail stores. | ex(1): C:\Mail\Outlook.pst; ex(2): C:\Edocs\Spreadsheets | Text |
| Page Count | The number of pages in the document. | | Text |
| Author | Author field value pulled from metadata of the native file. | ex: John Doe | Text |
| To | Main recipient(s) of the e-mail message. | ex: John Doe (jdoe@company.com); | Text - Multi-value, semicolon (;) delimiters. |
| From | Author of the e-mail message. | ex: John Doe (jdoe@company.com); | Text |

| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. | ex: John Doe (jdoe@company.com); | Text - Multi-value, semicolon (;) delimiters. |
|---|---|---|---|
| CC | Recipient(s) of "Carbon Copies) of the e-mail message. | ex: John Doe (jdoe@company.com); | Text - Multi-value, semicolon (;) delimiters. |
| EMail_Subject | Subject of the e-mail message. | ex: FW: LAW PreDiscovery | Text |
| Title | Title field value extracted from the metadata of the native file. | ex: Document Title | Text |
| DateCreated | Creation date of the native file. | | Date |
| DateLastMod | Date the native file was last modified. | | Date |
| DateLastPrnt | Date the native file was last printed (Office documents). | | Date |
| DateRcvd | Received date of an e-mail message. | | Date |
| DateSent | Sent date of an e-mail message. | | Date |
| TimeCreated | Creation time of the native file. | | Time |
| TimeLastMod | Time native file was last modified. | | Time |
| TimeLastPrnt | Time native file was last printed (Office documents). | | Time |
| TimeRcvd | Time the e-mail message was received. | | Time |
| TimeSent | Time the e-mail message was sent. | | Time |
| Processing Time Zone | The time zone in which the documents were standardized during processing. | | Text |
| Orig_Filename | Original filename of native file. Contains subject of e-mail message for e-mail records. | ex(1): Estimates.xls; ex(2): FW: Monday Meeting | Text |
| DocExt | File extension of native file. | ex: DOC | Text |
| Filesize | Size of native file, in bytes. | ex: 27739 | Numeric |
| MD5Hash | Calculated MD5Hash value. | ex: D564668821C34200FF3E32C9BFDCCC80 | Numeric |
| NativeFile | Export location of native document for record if produced natively. | ex: VOL001\Natives\PROD0000001.msg | Text |
| TextFile | Export location of extracted text or OCR text file. | | Text |

If any metadata described above does not exist, is not reasonably accessible, is not reasonably available, or would be unduly burdensome to collect or provide, those specific fields should be left blank, and nothing in this ESI Order shall require any party to extract, capture, collect or produce such metadata.  The Producing Party is not obligated to produce any other forms of metadata.  However, if good cause exists, the Requesting Party may request production of additional metadata by providing (1) a list of the Bates numbers of documents requested to be produced with additional metadata; (2) a list of the types of metadata sought; and (3) an explanation of the need for production of the requested metadata. The Producing Party shall not unreasonably deny such requests if the Requesting Party has demonstrated good cause, but need not make such production until the parties reach agreement regarding apportionment of any additional costs associated with the production of such additional metadata.

**<u>Paper Files:</u>**  These documents will be scanned (at no less than 300 DPI black and white) and produced electronically. These scanned documents should be separated at a logical level where there are large groups of documents with no physical separations, using Logical Document Determination, with parent and child attachment relationships.  At a minimum, box number, file drawer information, file folder tab, redweld tab information and binder tab will be captured during the scanning process. Scanned files will be created by the Parties in multi-page PDF files, if not possible to produce as TIFF images. A standard Concordance (.DAT) load file will be provided for scanned images with the following fields: BegDoc#, EndDoc#, BegAttach, EndAttach, BoxNum, Cabinet, Redweld, BinderTab, FileFolder. Oversized documents (greater than 11x17) may be reduced to 11x17. All scanned images will be produced with Bates numbering.

**EXHIBIT B**

**FORM OF STIPULATED ORDER UNDER FED. R. EVID. 502(d)**

**UNITED STATES DISTRICT COURT**

**_____ DISTRICT OF _____**

**[CAPTION]**

**STIPULATED ORDER UNDER FED. R. EVID. 502(d)**

IT IS HEREBY STIPULATED by and between Plaintiff _____, ("Plaintiff") and

Defendant _____, ("Defendants" and collectively with Plaintiff, the "Parties"), through

their respective attorneys of record, as follows:

WHEREAS, the documents and information, both electronically-stored and hard copy,

produced during discovery in this case may be voluminous given the complex nature of this case;

and

WHEREAS, pursuant to Fed. R. Evid. 502(d), the parties seek to ameliorate costs and risks

associated with the production of voluminous documents and information and resolving disputes

regarding privilege,

THEREFORE, this Court orders as follows:

(a)     **No Waiver by Disclosure.** This order is entered pursuant to Rule 502(d) of the

Federal Rules of Evidence. Subject to the provisions of this Order, if a party (the "Disclosing

Party") discloses information in connection with the pending litigation that the Disclosing Party

thereafter claims to be privileged or protected by the attorney-client privilege or work product

protection ("Protected Information"), the disclosure of that Protected Information will not

21

constitute or be deemed a waiver or forfeiture—in this or any other action, State or Federal—of any claim of privilege or work product protection that the Disclosing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

(b)     **Notification Requirements; Best Efforts of Receiving Party.** A Disclosing Party must promptly notify the party receiving the Protected Information (the "Receiving Party"), in writing, that it has disclosed that Protected Information without intending a waiver by the disclosure. Upon such notification, the Receiving Party must—unless it contests the claim of attorney-client privilege or work product protection in accordance with paragraph (c)—promptly (i) notify the Disclosing Party that it will make best efforts to identify and return, sequester or destroy (or in the case of electronically stored information, delete) the Protected Information and any reasonably accessible copies it has and (ii) provide a certification that it will cease further review, dissemination, and use of the Protected Information.  Within five business days of receipt of the notification from the Receiving Party that it contests the claim of attorney-client privilege or work product protection, the Disclosing Party must explain as specifically as possible why the Protected Information is privileged.  For purposes of this Order, if Protected Information that has been stored on a source of electronically stored information that is not reasonably accessible, such as backup storage media, is sequestered, the Receiving Party must promptly take steps to delete or sequester the restored protected information if and when such data is retrieved.

(c)     **Contesting Claim of Privilege or Work Product Protection.** If the Receiving Party contests the claim of attorney-client privilege or work product protection, the Receiving Party must—within five business days of receipt of the Disclosing Party's explanation of privilege as set forth in paragraph (b)—move the Court for an Order compelling disclosure of the information claimed as unprotected (a "Disclosure Motion"). The Disclosure Motion must be filed

under seal and must not assert as a ground for compelling disclosure the fact or circumstances of the disclosure. Pending resolution of the Disclosure Motion, the Receiving Party must not use the challenged information in any way or disclose it to any person other than those required by law to be served with a copy of the sealed Disclosure Motion.

(d)     **Stipulated Time Periods.** The parties may stipulate to extend the time periods set forth in paragraphs (b) and (c).

(e)     **Attorney's Ethical Responsibilities.** Nothing in this order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the Disclosing Party that such materials have been produced.

(f)     **Burden of Proving Privilege or Work-Product Protection.** The Disclosing Party retains the burden—upon challenge pursuant to paragraph (c)—of establishing the privileged or protected nature of the Protected Information.

(g)     **In camera Review.** Nothing in this Order limits the right of any party to petition the Court for an in camera review of the Protected Information.

(h)     **Voluntary and Subject Matter Waiver.** This Order does not preclude a party from voluntarily waiving the attorney-client privilege or work product protection. The provisions of Federal Rule 502(a) apply when the Disclosing Party uses or indicates that it may use information produced under this Order to support a claim or defense.

(i)     **Rule 502(b)(2).** The provisions of Federal Rule of Evidence 502(b)(2) are inapplicable to the production of Protected Information under this Order.

/s/ _____

[insert]

23

*Attorneys for Plaintiff*

/s/ _____

[insert]

*Attorneys for Defendant*

IT IS SO ORDERED.

Dated: _____, 201_        _____

                                                  UNITED STATES DISTRICT JUDGE